# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

EDDY POPA-VERDECIA,

      Plaintiff,

v.                                CASE NO.  8:18-cv-1869-T-02AEP

MARCO TRUCKING, INC.,

      Defendant.

_____/

## **O R D E R**

Before the Court is Defendant's Motion to Dismiss or, alternatively, for Summary Judgment (Dkt. 11), Plaintiff's Response (Dkt. 16), and Defendant's Reply (Dkt. 22).  The Court held oral argument on these matters and now grants summary judgment in favor of Defendant.[1]  Plaintiff released the instant claims in his prior workers' compensation lawsuit against this Defendant.

---

[1]  The Court is required to convert a motion to dismiss into a motion for summary judgment if the documents considered are not deemed central to the Plaintiff's claim.  *See Fed. R. Civ. P.* 12(d); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (articulating that documents attached to complaint must be "central to plaintiff's claim" to avoid converting motion to dismiss into one for summary judgment); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley's* centrality requirement); *see, e.g.*, *Basson v. Mortgage Elec. Registration Sys., Inc.*, 741 F. App'x 770 (11th Cir. 2018) (affirming on issue of whether district court erred in failing to convert motion to dismiss into summary judgment).  Affidavits attacking the truthfulness of sworn statements in settlement documents of another case are not central to Plaintiff's claims in this case.

## UNCONTESTED FACTS

Plaintiff brings here one count against Defendant under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* Plaintiff says Defendant did not reasonably accommodate Plaintiff under the ADA after he suffered an injury on the job.

Plaintiff was a warehouse worker for Defendant. Dkt. 1 at 3. Plaintiff became injured while lifting parcels. *Id.* Plaintiff filed a workers' compensation case against Defendant in 2017, seeking compensation for the job-related injuries. Throughout this workers' compensation proceeding Plaintiff was represented by Jason Kobal, Esq.

Plaintiff settled the workers' compensation litigation with Defendant for $3800. Dkt. 11-2 at 1. In the Settlement Agreement and Release, signed by Plaintiff and his lawyer Kobal, the parties state that the settlement will be presented to the presiding workers' compensation judge for approval. The settlement contains a very broad release as to Defendant. *Id.* at 2-5. The settlement further provides for fees paid to attorney Kobal. *Id.* at 3.

In the settlement agreement, Plaintiff expressly avers that he has "full and complete knowledge of all pertinent and material facts in the instant claim [and] . . . is fully informed of the contents of this Settlement Agreement and Release and

signs it with full knowledge of its meaning." *Id*. at 5, 7. In this section of the settlement Plaintiff expressly releases and holds harmless the Defendant from any claims under the Americans with Disabilities Act. *Id*.

Another section of the settlement agreement notes that Plaintiff "affirms he is mentally competent and understands all of the terms of this agreement and the consequences therefrom and further has had advice of counsel, with whom the [Plaintiff] is satisfied . . . [Plaintiff] represents that he has read this settlement agreement and release and hereby acknowledges that he understands and accepts all of the terms and conditions herein and that he has done so with the advice of counsel." *Id*. at 7.

The signature block on the settlement agreement states that Plaintiff and lawyer Kobal signed it August 1, 2017. *Id*. at 8. Below this block is a notary jurat of Glorimar N. Saba, Florida Notary Public, which states that Plaintiff, personally known, appeared before her on August 1, 2017 and signed. *Id*. at 9. Further, Notary Saba states in the jurat: "[Plaintiff] upon being duly sworn certifies that the information furnished by him as incorporated in the foregoing Settlement Agreement and Release is true and correct and that he (has read the Stipulation) (has had the Stipulation read to him) and has executed the foregoing general release . . . freely and voluntarily for the uses and purposes therein expressed." *Id*. at 9.

Also as part of the workers' compensation settlement Plaintiff signed a second document, styled "Release and Indemnity Agreement." Dkt. 11-3. In this broadly-written six-page document, Plaintiff again releases all ADA claims on the first page and the second page. In this second document Plaintiff also states he has had the full time and opportunity to consult with his counsel and "fully understands the terms and conditions of the Agreement." Dkt. 11-3 at 5. Plaintiff further averred he had been given 21 days to consider the Agreement and also had a seven-day post-signature rescission right. *Id*. at 6.

This second document shows a signature block signed by Plaintiff on August 1, 2017. *Id*. at 6. A jurat by Notary Saba follows, dated August 1, 2017. Notary Saba states in the jurat that Plaintiff appeared before her and "acknowledged to me that he has executed the foregoing Release and Indemnity Agreement freely and voluntarily for the uses and purposes therein expressed." *Id*.

Plaintiff executed a third document to effect this workers' compensation settlement. This was an affidavit in which he swore that "the Settlement Agreement and Release of all Claims . . . was either read by me or to me in Spanish and that the agreement was explained to me by my attorney, Jason R. Kobal, Esquire, with the assistance of a translator." Dkt. 11-4 at 1. The affidavit goes on to establish Plaintiff's competency and voluntariness, that Plaintiff understood the agreement

was "final and cannot be changed." *Id*. at 2. This third document, the affidavit, is signed by Plaintiff with Notary Saba affirming on August 1, 2017 the affidavit was sworn and subscribed before her.

The settlement documentation described above was then presented to the workers' compensation judge by the lawyers for approval. Judge Mark A. Massey entered an order approving allocation of settlement proceeds on August 3, 2017. Dkt. 11-5. Prior to filing the instant ADA suit against Defendant one year later, Plaintiff did not return or tender back the money he and his lawyer got for the workers' compensation settlement and releases. Dkt. 25 at 7.

Notary Saba is licensed as a notary public under Florida law. Accordingly, under Florida Statute, section 117.107(5), she may not notarize a signature "if it appears that the person is mentally incapable of understanding the nature and effect of the document at the time of notarization." Moreover, Notary Saba is barred from notarizing the signature "of a person who does not speak or understand the English language, unless the nature and effect of the instrument to be notarized is translated." *Fla. Stat*. § 117.107(6). And of course it is illegal to notarize a signature if the signer is "not in the presence of the notary at the time." *Fla. Stat*. § 117.107(9). A notary (and presumably anyone abetting same) commits a third-

degree felony if she falsely or fraudulently takes an acknowledgment or falsely makes a notarial certificate. *Fla. Stat.* § 117.105.

Other uncontested facts are as follows: Concerning the releases Plaintiff asserts no fraud by the Defendant or its privies. Dkt. 25 at 7. Nor does Plaintiff assert Defendant exerted duress on Plaintiff. *Id.* at 7. Plaintiff admits Defendant did not exercise overreaching or improper conduct. *Id*. at 7-8. Plaintiff agrees that the releases/settlements are authentic, *i.e.*, not forged. *Id*. at 5. And Plaintiff admits that the releases/settlements that Plaintiff signed, if valid, clearly release the instant claim. *Id*.

Plaintiff states the following to establish a unilateral mistake and avoid the impact of the releases: Lawyer Kobal filed an affidavit (Dkt. 16-1) saying Notary Saba is the office translator. On July 3, 2017, Plaintiff was presented with the workers' compensation settlement offer at Kobal's office and Saba was out of the office. Kobal swears in his affidavit that Plaintiff speaks no English and Plaintiff asked Kobal at that time if the settlement would impact Plaintiff's "other case." Kobal thought Plaintiff was referring to Plaintiff's car wreck case Kobal was handling, so Kobal answered "No." Kobal suggests Plaintiff actually meant his ADA case handled by Plaintiff's present counsel, so a misunderstanding occurred. *Id*.

Plaintiff also files the affidavit of Notary Saba. Dkt. 16-2. Saba swears in her affidavit that she is the office translator. She says Plaintiff speaks only Spanish and Kobal only English. Saba states she was not present when the workers' compensation settlement agreement was explained to Plaintiff on July 3, 2017.

Plaintiff filed his own affidavit. Dkt. 23-1. He states that he arrived at Kobal's office to sign the workers' compensation settlement documents. At this time, he asked Kobal if the release "would affect my other case." Saba was not present, and Plaintiff speaks no English and Kobal speaks no Spanish. Plaintiff says he then signed the settlement documents under the mis-impression from Kobal that the release would not affect his instant ADA case. *Id.*

## DISCUSSION OF THE FACTS

Plaintiff attempts to negate clear and controlling releases that he gave for value in the prior lawsuit. He seeks to do so through unilateral mistake. The problem is that his facts do not add up.

Plaintiff's affidavit says he signed the settlement documentation in the absence of Saba. Dkt. 23-1. Plaintiff's present lawyer agrees that this is Plaintiff's story:

> Apparently, the days that these documents were executed,
> the settlement documents were executed on the workers'

compensation claim, Mr. Kobal's paralegal [Notary Saba] was not in the office.  She was not present.

Dkt. 25 at 4.

If this version of Plaintiff's story is correct, Saba has violated Florida law, and possibly committed notarial fraud.  Saba's jurats state clearly that Plaintiff was in her presence and [presumably in their common Spanish language] had the documents fully presented to him, and Saba noted his acknowledgment.

Attorney Kobal's affidavit suggests that the meeting and signing of the documents occurred July 3, 2017, as does Plaintiff's affidavit.  Plaintiff's present attorney also concurs that this is Plaintiff's story.[2]  If that is true, then lawyer Kobal

---

[2]

      [Mr. Sartes:] The correspondence and the communication, normally, between Mr. Kobal and [Plaintiff] was through Mr. Kobal's paralegal, who is a native Spanish speaker. Apparently, the days that these documents were executed, the settlement documents were executed on the workers' compensation claim, Mr. Kobal's paralegal was not in the office.  She was not present.

        So [Plaintiff] was asked to come in.  He came in.  Papers were put in front of him, and they said, "sign here."  There was some I'll call it "dirty conversation" about "Everything okay on my other case?"  Mr. Kobal, the presumption being the car accident case, "Yeah.  No problem.  It's fine."

      [Court:] Who was that? That was between Kobal and Plaintiff?

      [Mr. Sartes:] Yes, sir.  And I want to make it clear that's – I call it a "dirty conversation."  I'm not sure how better to

had Plaintiff sign the settlement documentation on July 3 without a notary or even a Spanish speaker in the office, yet a month later [on August 1] Kobal's notary certified to then witnessing the knowing and acknowledged signatures "before me" and dated August 1. The notarial jurats belie Plaintiff's story. Or perhaps Plaintiff lied in his affidavit to the workers' compensation judge when he swore to that court that the terms of the releases were fully interpreted to him and he understood them. Dkt. 11-4. There is no need to go further given the law.

## THE LEGAL PRINCIPLES

Apart from the disturbing affidavits discussed above, the issue here is whether a unilateral mistake on the part of Plaintiff vitiates the plain release in the settlement documents of Plaintiff's ADA claim against Defendant. Plaintiff presented these releases to a court, swearing that they were understood in his native language and proper. Now he swears to the contrary. The prevailing authority dictates that Plaintiff cannot proceed.

There is a presumption that Plaintiff knew what he was signing if he consulted a lawyer. *Myricks v. Federal Reserve Bank of Atlanta*, 480 F.3d 1036,

_____

explain it. It's [Plaintiff's] limited English, Mr. Kobal's ability to express, thinking that it is the car accident he's talking about, not realizing he has an ADA claim with our firm.

Dkt. 25 at 4-5.

1041-42 (11th Cir. 2007) (rejecting employee's argument that subjective misunderstanding is sufficient to defeat the validity of a release); *Riley v. Am. Family Mut. Ins. Co.*, 881 F.2d 368, 373 (7th Cir. 1989) ("[A] plaintiff who executes a release within the context of a settlement pursuant to the advice of independent counsel is presumed to have executed the document knowingly and voluntarily absent claims of fraud or duress."). "Plaintiff's mere dissatisfaction with the advice of his attorney cannot support a finding that his agreement to settle and release his claims was not knowing or voluntary." *Shepard v. Florida Power Corp.*, No. 8:09-cv-2398-T-27TGW, 2011 WL 1465995, at *3 (M.D. Fla. Apr. 18, 2011) (citing *Myricks*). Plaintiff has failed to show by any submissions that overcome the presumption that when he signed the settlement documents he did not knowingly or voluntarily release his ADA claim.

Defendant is the innocent party here, having obtained a release/settlement for good value without overreaching, and with a court approval of same. Plaintiff admits there was no duress, overreaching, or improper conduct by Defendant.

Plaintiff relies on *Riddell v. Medical Inter-Insurance Exchange*, 18 F.Supp.2d 468 (D. N.J. 1998), and *Torrez v. Public Service Company of New Mexico*, Inc., 908 F.2d 687 (10th Cir. 1990). Both cases are distinguishable. Both

*Riddell* and *Torrez* involved employees signing releases without consulting with an attorney. Plaintiff always had attorney Kobal.

On summary judgment, the Court must construe "the facts and all reasonable inferences from the facts in favor of the nonmoving party." *Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1170 (11ᵗʰ Cir. 2018). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a); *Stardust*, 899 F.3d at 1170. Having determined that there is no genuine issue of material fact for this matter to proceed to trial, summary judgment is appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986).

**ACCORDINGLY**, Defendant's Motion for Summary Judgment (Dkt. 11) is granted. The Clerk is directed to enter judgment against Plaintiff, to terminate any pending motions/deadlines, and to close the case.

**DONE AND ORDERED** at Tampa, Florida, on December 11, 2018.

       s/*William F. Jung*_____
       **WILLIAM F. JUNG**
       **UNITED STATES DISTRICT JUDGE**

<u>COPIES FURNISHED TO</u>:
Counsel of Record